UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW HAMPSHIRE


**************************************************
                                    *
UNITED STATES                       *
                                    *
      V.                            *        No. 13-CR-130-01-LM
                                    *
RYAN NORMAND                        *
                                    *
**************************************************

### DEFENDANT'S SENTENCING MEMORANDUM INCLUDING MOTION FOR DEPARTURE AND FOR NON-GUIDELINE SENTENCE

### Introduction

The Defendant, Ryan Normand, respectfully submits this sentencing memorandum. In this memorandum the Defendant respectfully argues that a sentence that does not include further imprisonment is the sentence that best achieves the goals and purposes of sentencing as set forth at 18 USC §3553(a).

There are a number of ways in which this Court can responsibly impose a non-incarcerative sentence in this case:

1.) This Court can adopt the Defendant's interpretation of the term "prior sentence" under USSG § 4A1.2 (a) and USSG § 1B1.3 and find that the Defendant's currently un-discharged state sentence and the crime in this case are "related matters."

1

This would yield a Guideline level of 13 and criminal history category 1. The court could then impose a split sentence of 12 months, six months to be served concurrently with his state sentence and credit the Defendant with six months already served followed by a period of supervised release.

2.) This Court can reasonably find that the sentencing guideline substantially over-represents the Defendant's criminal history and the likelihood that he will commit other crimes and impose a downward departure pursuant to USSG §4A 1.3(b) to Criminal History Category 1.

3.) Given the unique facts and circumstances of this case the Court can responsibly impose a non-guideline sentence of probation because that sentence best serves the purposes and goals of 18 USC § 3553 (a).

Any of the above referenced pathways would result in a non-incarcerative sentence that best meets the goals and purposes of sentencing for this Defendant.

## The Defendant

Ryan Normand is twenty three years of age. Before his involvement in the facts underlying this case he had no prior criminal record and had never spent a night in jail. He is a life-long resident of Manchester. His parents are divorced but he maintains good relationships with both. He has the support of his immediate and an extended family in

2

the Manchester area. He resides with his mother, Sylvie Normand, and his younger

sister, Courtney. Ryan does not drive and has never held a driver's license.

Ryan attended schools in the Manchester public school system where he was

diagnosed with attention deficit disorder and treated for many years by Dr. Richard

Cornell and Nancy Thompson at the Bedford Counseling Center. Between the ages of

10 and 15, Ryan was in counseling on a weekly basis and medicated with Adderall.

Initially, Ryan was well engaged in school and participated as a member of several

athletic teams including the Manchester Flames (hockey – 8 years); the Youngsville

Hawks (Pop Warner football – 8 years) and various little league baseball teams.

Unfortunately, as he aged and continued to battle his learning disabilities, Ryan did not

perform well in school and dropped out in the tenth grade. He ultimately returned to

adult education and obtained a GED certificate in 2009. Ryan does not possess any

specialized job skills. While the Defendant is in good physical health, he is significantly

overweight.

Despite his educational deficits, physical deficits and the lack of job skills, Ryan

prior to his arrest, had nonetheless managed to maintain fairly regular employment,

albeit in low skill, low paying and seasonal jobs. He has accomplished this by taking

advantage of various seasonal and part-time employment opportunities. During the

baseball season, he worked at Fisher Cat Stadium as a vendor. He has been employed

for the Halloween season at the Party Center (formerly known as Iparty) on South Willow Street. When working, Ryan contributes to the household expenses in his mother's home. In the past, Ryan has volunteered his time to work at the Manchester Animal Shelter on Dunbarton Road. He is willing and able to perform community service.

Ryan's family reports that he is a shy and somewhat naïve. Although always a "team player" he is not popular with his peers and has few friends. His best friend was Kyle Levesque. Ryan's confession to the Manchester Police truthfully and necessarily implicated Kyle. Kyle is related to Garrett Gauthier and it was through this friendship that Ryan came to commit the instant offense.

Ryan's group of friends was small. At the state sentencing Paul Normand explained that Ryan is normally seeking approval from his peers, and he is usually a follower rather than a leader. He is concerned that these character traits contributed to his son's involvement with Garret Gauthier and others. While recognizing that Ryan "knows better," Paul and Sylvie Normand both believe that Ryan's poor choices are explained but not excused by his lack of a quality education, full-time employment and healthy social connections.

4

**The Offense Conduct**

On April 12, 2013, Garrett Gauthier engaged in a shoot-out with officers of the Manchester Police Department. Ryan Normand was not involved in the shoot-out or the events surrounding the shootout.

After Gauthier's arrest, Manchester police officers determined that the gun used by Gauthier was purchased by Ryan at the Kittery Trading Post in Maine. Upon learning of this fact, officers traveled to Ryan's home in Manchester. While there they met his mother, Sylvie Normand. Ryan was not home and could not be contacted while the officers were at the home. Before leaving, they asked Mrs. Normand to have Ryan contact them upon his return. The officers did not tell Mrs. Normand why they were looking for Ryan. When they left, Mrs. Normand went to the Defendant's bedroom where she located a number of firearms in the Defendant's bedding. She then contacted the Manchester Police and they returned to the home.  Despite having Mrs. Normand's permission, the officers were concerned about violating Ryan's Fourth Amendment rights.  The officers did not initially enter the home but waited until Ryan returned home and they received his cooperation and permission to seize the firearms. The officers asked Ryan to speak with them at the station which he agreed to do. Ultimately, he confessed to the officers that he purchased several firearms for Garret Gauthier and was paid for doing so. He also confessed that after learning of the shoot-out he and

others responded to Gauthier's home and removed the firearms. He told the police that he did this because he "didn't want to get caught up in it." In his confession, the Defendant implicated others including his best friend, Kyle Levesque. After confessing, Ryan was released from the station.

Thereafter, Ryan went to the home of his best friend, Kyle Levesque.  As Ryan arrived, the police were there to arrest Kyle. While in the presence of the arresting officers, Ryan again cooperated and confessed his involvement in removing firearms form the residence of Garret Gauthier. The Defendant also admitted that they had removed a quantity of marijuana from the residence and advised the officers where the marijuana could be found. It was subsequently confiscated by the officers.

On April 15, 2013, Ryan and Kyle discovered that the police had not seized all of the weapons that had been removed from the Gauthier residence. With the assistance of Ryan's father, Paul Normand, the men voluntarily delivered an AK-47 rifle that was removed from the Gauthier residence to the Manchester Police Department. In the confusion of the day, this firearm had been left in a locked shed on the Normand property.

Ryan was not arrested by state authorities at the time of his confession or thereafter.

6

**The State Prosecution**

On April 19, 2013, four days after his confession, Ryan retained counsel. In his initial contacts with law enforcement authorities, undersigned counsel explained that the Defendant would consider further cooperation but that all contact should be made through counsel. Initially state authorities did not respond to counsel's offer.

Ryan was indicted by the Hillsborough County Grand Jury on June 20, 2013. He was charged with two counts of falsifying physical evidence by removing guns and marijuana from the apartment in which Garret Gauthier resided.  Pursuant to New Hampshire Superior Court Rule 97 he waived formal arraignment and entered a not guilty plea.  On September 16, 2013 Ryan filed a Notice of Intent to Enter a Plea of Guilty in state court. The terms of the state plea were a negotiated capped plea. The sentence that could be imposed on the Defendant was capped at nine months followed by two years of probation. On the second indictment it was agreed that Ryan would receive a sentence to the New Hampshire State Prison of two to four years suspended (not to be called forward after five years.)  On October 31, 2013 he was sentenced to a term of nine months of imprisonment followed by two years of probation. In addition he was sentenced to a suspended state prison sentence of two to four years on the second indictment (consecutive). The state will exercise probationary supervision over the Defendant for two years after his release from imprisonment. In addition the state

7

may seek to impose the suspended sentence for a period of five years after Ryan's release from jail.

At all times pending his indictment and sentencing in state court Ryan was at liberty and maintained a family-oriented and law-abiding lifestyle. Since his sentencing in state court Ryan has ben incarcerated at the Hillsborough County House of Corrections on Valley Street in Manchester. He is scheduled for release from that sentence on April 29, 2014.

**The Instant Case and the State Case Should be Considered to be Related Conduct**

The state sentences should not be considered to be a "prior sentence" for calculation of the sentencing guidelines in this matter. The New Hampshire state charges should be considered to be relevant conduct to the present offense and therefore are not considered to be a prior sentence. *See* USSG §4A1.2 (a) (1).

At the time of his confession Ryan told Manchester Police Officers that "he got the guns after the shooting and removed the guns so there was no connection to him (Ryan). . ."  When asked why he drove to get the guns Ryan stated that he "did not want to get caught up in it." These statements demonstrate that the state offense was related to or relevant conduct to the instant offense. USSG §4A1.2 (a) Application Note 1 states: "Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of §1B1.3."   USSG §1B1.3 defines

relevant conduct, in pertinent part, as "all acts and omissions committed , aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG §1B1.3 (a) (1) (A). The Defendant's conduct that formed the basis of the state charges - falsifying physical evidence – was undertaken at a time when the Defendant believed he would be arrested and was for the purpose of avoiding detection or responsibility for the instant offense - that is purchasing firearms for Garret Gauthier.

Under the sentencing guidelines Ryan's conduct that formed the basis of the state charges is related conduct to the instant charge because it was undertaken to avoid detection or responsibility for the instant charge. Therefore the state conviction and sentence should not result in any criminal history points and the Defendant properly should be classified as Criminal History Category 1.

The result of being in Criminal History Category 1 is that the Defendant falls within Zone C of the guideline grid and is therefore eligible for  a concurrent split sentence that takes into account the time that Ryan has served and permits him to be released to a period of home detention. *See* USSG §5C1.1 (d).

**The Court Should Depart Downwards Because the Guideline Criminal History Category Overstates the Seriousness of the Defendant's Criminal History and the Likelihood That He Will Commit Other Crimes**

In any event Criminal History Category 2 substantially over-represents Ryan's criminal history and the likelihood that he will commit other crimes. The state charges and the federal charge are closely related to each other in that Ryan committed the state charge to avoid being detected on the instant charge. This effort was ill conceived and short lived. Within a short period time after removing the firearms from Gauthier's apartment Ryan provided the firearms to the police and confessed his involvement in the instant offense and the state conduct. Prior to this episode Ryan had no criminal record and had never spent a night in jail. Nevertheless he received a substantial sentence of imprisonment in the state court which, in part, took into consideration the fact that he had purchased the firearm used by Gauthier and which is the subject of the instant offense. This fact should be recognized by the Court by exercising its authority to depart downward under the guidelines. Specifically, USSG §4A 1.3(b) permits this Court to depart to Criminal History Category 1 after finding, based on reliable information, that Criminal History Category 2 over-represents the seriousness of the Defendant's criminal history or the likelihood that he will commit other crimes. *See,* USSG §4A 1.3(b).  It is also notable that a probationary sentence from the federal court will accommodate the penological interests served by the state sentence.

**A Non-Incarcerative Sentence is the Sentence that Best Serves the Goals and Purposes of Sentencing as Expressed in 18 USC §3553(a)**

This Court has the authority to impose a sentence that varies from the sentence suggested by application of the United States Sentencing Guidelines. *See United States. v. Booker*, 543 U.S. 220, 126 S. Ct. 738 (2005). Although the sentencing process must commence with a guideline calculation, the United States Sentencing Guidelines are merely advisory, and district courts are required to consider all of the factors listed in 18 U.S.C. §3553(a) in imposing sentence. *See Gall v. United States*, 128 S.Ct. 586, 596-97 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Booker*, 543 U.S. at 262; *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008) ("A district court should begin its sentencing analysis with the advisory guidelines calculation, then its "next steps should include hearing argument from parties as to the proper sentence in a particular case, weighing the applicability of the sundry factors delineated in 18 U.S.C. §3553(a), reaching an ultimate sentencing determination, and explicating that decision on the record.") (citing, *Gall*, 128 S.Ct. at 596-97). Underpinning the penological interests in 18 U.S.C. §3553(a) is the requirement that a Court must impose a sentence that is "sufficient, but not greater than necessary," to achieve the underlying purposes of the sentencing statute. 18 U.S.C. §3553(a). Section 3553(a) directs sentencing courts to consider a number of factors, *inter alia:*

11

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed

(A) to reflect the seriousness of the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* The importance of, and rationale for, the post-*Booker* and *Gall* sentencing procedure

described above has been summarized by the First Circuit Court of Appeals as follows:

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility. In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*Martin,* 520 F.3d at 91 (citing *Gall,* 128 S.Ct. at 598). In this case there are a number of

mitigating considerations that should be considered by this Court.

Ryan has already served six months of his nine month state sentence. If awarded

his earned time, Ryan should be eligible for release today or within a few days. Further

incarceration will not advance any of the statutory criteria set out in 18 USC §3553(a).

Public knowledge about Ryan's crime stems primarily from his association with Garrett

Gauthier. The Defendant was convicted and incarcerated in a relatively swift fashion. Further incarceration will not measurably add to the deterrent effect of the state sentence or promote any additional respect for the law. Further incarceration will only serve to remove Ryan from his Manchester community. Removal from the Manchester community would likely disrupt the correctional treatment that the Defendant has received so far in the state system and separate him from the family that has supported him so far.

In considering Ryan's individual characteristics it is clear that he is not a violent person. His family reports that in his involvement with sports as a youth he was always a team player and a good sport. While he had some difficulties at a young age with authority his acting out involved only himself and he was never violent to others. Diagnosed with attention deficit hyperactivity disorder at age 8 the Defendant was treated and medicated. His mother reports that the medication worked for Ryan as a child and that he his behavior issues subsided over time. She describes him as a "good kid" and looks forward to his return home. Ryan's ADHD ultimately affected his ability to succeed in high school. He dropped out but within a year, through self-determination and hard work, earned a GED. The Defendant's ability to overcome these challenges speaks to his ability to live a law-abiding lifestyle and to comport with all of the conditions of probation.

Ryan is only 24 years of age. Before his entanglement with Garrett Gauthier he had never been arrested. He has learned a hard lesson about who he should befriend. With the support of his family and the deterrent effect of having just served approximately six months in the Valley Street Jail it is extremely unlikely that Ryan will allow himself to be the patsy for anyone in the future.

While the state criminal conduct and the federal criminal conduct may be legally distinguishable, to the Defendant and those that know him best, it is all connected. Ryan allowed himself to be manipulated for a few hundred dollars. He has paid a significant price. Further incarceration would be more than is necessary.

Wherefore the Defendant respectfully moves this Court to impose a sentence of probation.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Ryan Normand, Defendant |
|  | By his Attorneys, |
|  | Brennan, Caron, Lenehan & Iacopino |
| Date: April 21, 2014 | By:/s/Michael J. Iacopino |
|  | Michael J. Iacopino, Esq. (NH Bar No. 1233) |
|  | 85 Brook Street |
|  | Manchester, N.H. 03104 |
|  | (603) 668-8300 |

14

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Sentencing Memorandum, has been forwarded, even date herewith, postage prepaid, to Assistant United States Attorney Robert Veiga via ECF.

/s/ Michael J. Iacopino
Michael J. Iacopino, Esq.

15